UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

PETER LUGER, INC.

                 Plaintiff,

       -against-

CARL VON LUGER, LLC; ROBERT DICKERT, an
individual,

              Defendants.

-------------------------------------------------------------------- x

Case No. 17-cv-3767

**COMPLAINT FOR
TRADEMARK
INFRINGEMENT, FALSE
DESIGNATION OF ORIGIN,
FALSE ADVERTISING,
TRADEMARK DILUTION,
AND UNFAIR
COMPETITION**

Plaintiff Peter Luger, Inc. ("Peter Luger"), by and through its attorneys, Winston &
Strawn LLP, as and for its Complaint, alleges as follows:

### NATURE OF THE ACTION

1.    This action for trademark infringement, false designation of origin, false advertising,
trademark dilution, and unfair competition arises out of Defendants' intentional adoption and use
of a brand for steakhouses and related products that is confusingly similar to Peter Luger's famous
brand for steakhouses, and other false advertising, all in a deliberate effort to create a false
association between Defendants' Carl von Luger steakhouses and Plaintiff's famous Peter Luger
steakhouses.

2.    Established in 1887, the Peter Luger steakhouse has become the gold standard for
steakhouses in the United States.  Plaintiff's dedicated dry-aging room and careful selection of
meats have led to a Michelin-starred restaurant rating, Zagat's 'top-rated steak house in New York'
award every year since the magazine's 1979 inception, inclusion in James Beard Foundation's List
of American Classics, a four-star rating in the 1968 New York Times Guide to Dining Out in New
York by food critic Craig Claiborne, countless other awards, and nationwide acclaim.  Plaintiff's

reputation and high quality have translated into substantial goodwill embodied by its famous PETER LUGER mark.

3.    Defendant Robert Dickert, a former employee at the Peter Luger steakhouse in Long Island, who has not been employed or otherwise connected to the restaurant for over 30 years (since 1986), launched the Carl von Luger Steak and Seafood restaurant in Scranton, Pennsylvania and has recently announced plans to open a new Carl von Luger steakhouse along with a more casual restaurant in North Palm Beach, Florida. In addition to adopting a deliberately confusing name, Defendants have copied elements of Plaintiff's branding and made false statements in connection with their promotional material, all in an effort to falsely associate their steakhouses with Plaintiff's famous steakhouses. Defendants' infringement and false advertising has already engendered a good deal of confusion in the marketplace and will continue to do so unless stopped.

## THE PARTIES

4.    Plaintiff Peter Luger, Inc. is a New York corporation with its principal place of business at 178 Broadway, Brooklyn, New York.

5.    Defendant Carl von Luger, LLC is a Pennsylvania corporation with its principal place of business in Scranton, Pennsylvania.

6.    Defendant Robert Dickert is an individual who owns and operates the Carl von Luger Steak and Seafood restaurant.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the federal Lanham Act relating to trademarks (15 U.S.C. § 1051 *et seq.*), and because the state law claims are joined with related and substantial claims under the federal Lanham Act. Further, this Court may exercise supplemental jurisdiction over Plaintiff's claims that arise under the laws of the State of New York and common law pursuant to 28 U.S.C. § 1367 because they are so related to the claims arising under the federal Lanham Act that they form part of the same case or controversy.

8.     This Court has personal jurisdiction over Defendants because Defendants have knowingly targeted Plaintiff in this District with their infringing acts; have knowingly targeted residents of New York familiar with the renowned Peter Luger steakhouse with the launch of their new Carl von Luger steakhouse in North Palm Beach, Florida; and because Defendants conduct business in the state of New York.  Defendants market and sell product under the infringing Carl von Luger brand directly to consumers, including consumers in New York, through an interactive website located at *www.carlvonluger.com*, which is available to users in this District. Defendants' website also touts the fact that "[o]ur steaks are delivered weekly from New York and Philadelphia to ensure the best quality."

9.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the property that is the subject of this action is located in this District, and because Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### A.     <u>Plaintiff and Its Famous PETER LUGER Marks</u>

10.     Plaintiff's Peter Luger steakhouse in Brooklyn, New York is one of the oldest, continuously operated steakhouses in the United States and enjoys a national reputation for selling the highest quality meat products.  The current owners of the Peter Luger steakhouse and associated rights, the Forman family, purchased the business directly from the Luger family more than 60 years ago.  Plaintiff and its predecessors in interest have owned and operated the famous Peter Luger steakhouse under the Peter Luger brand since 1887.

11.     Plaintiff and its related company, Peter Luger of Long Island, Inc. (hereinafter collectively referred to as "Peter Luger"), own the Peter Luger steakhouse restaurant at the iconic 178 Broadway location in Brooklyn, New York, and own and operate a second location in Great Neck, New York.  Both of these steakhouses are commonly referred to by the public and the media as "Luger" or "Luger's", as well as by the full name, Peter Luger.

12.     Plaintiff's pristine reputation depends upon the careful selection and preparation of the highest quality meat products. Plaintiff buys only U.S.D.A. prime beef.  The beef is dry aged

in Plaintiff's own lockers and then butchered and trimmed by Plaintiff's staff on its premises prior to cooking. Plaintiff purchases over ten tons of beef per week to supply its Peter Luger steakhouse restaurants. All meat purchased by Plaintiff is personally selected and approved by members of the Forman family.

13.    Plaintiff's Peter Luger steakhouses are consistently rated as the No. 1 steakhouse restaurants in the United States by the Zagat Survey, USA Today, Food Network, and a long and comprehensive list that includes many of the country's preeminent restaurant guides, rankings and reviews.  Plaintiff's Peter Luger steakhouses and PETER LUGER- brand steak sauce have also been favorably reviewed by restaurant critics and food writers in national newspapers and magazines for many years and have been featured nationally on The Tonight Show, NYPD Blue, HBO's Billions, Vice News shows as well as in in best-selling books such as *The Princess Bride* by William Goldman, *Is Salami and Eggs Better than Sex* by Alan King and Mimi Sheraton, and *The Advocate's Devil* by Alan Dershowitz.

14.    As a result, Plaintiff maintains a nationwide customer base that includes, and has included, large national and multinational corporations; politicians such as New York Senator Chuck Schumer and former New York Mayor Rudolph Giuliani; famous actors and directors such as Ethan Hawke, Seth Rogen, Jimmy Fallon, Jonah Hill, Uma Thurman, Quentin Tarantino, Tom Cruise, Bill Murray and Alfred Hitchcock, who called Peter Luger's steak "the best in the universe"; television celebrities, past and present, including Johnny Carson who remarked that "I had the best meal I ever ate at Peter Luger's"; the New York Mets baseball team; and millions of patrons who travel to Plaintiff's Peter Luger steakhouses from throughout the United States and abroad.  Plaintiff's national customer base is a direct result of, as well as a reflection of, its national reputation.

15.    Plaintiff's famous marks PETER LUGER, LUGER and LUGER'S are used on a wide variety of printed materials such as menus, labels, packaging materials for meat products, postcards, and signage associated with its steakhouses, steak sauce, bacon and meat products.

16.     Plaintiff also uses its famous PETER LUGER mark in connection with promotional items such as t-shirts, golf shirts, salt and pepper-shakers, hats and steak knives.

17.     In addition to operating its famous steakhouses, Plaintiff sells steaks, steak sauce, bacon, and promotional items under the PETER LUGER mark through Plaintiff's website at *www.peterluger.com*, and by direct mail.

18.     For the convenience of its loyal following and customer base, Plaintiff issues a "Peter Luger" credit card bearing Plaintiff's famous PETER LUGER logo (as depicted in Paragraph 19 below), for use in Plaintiff's steakhouse restaurants and online at *www.peterluger.com*, when purchasing PETER LUGER- brand meat products, steak sauce and promotional materials.

**B.      Plaintiff's Trademarks**

19.     Long before Defendant Carl von Luger was incorporated in 2009, Plaintiff has been using, and continues to use, the names PETER LUGER, LUGER, and LUGER'S in connection with its restaurants and related meat and food goods and services and, as well as in various stylized forms (including as depicted below) (collectively, the "PETER LUGER Marks").



20.     While Plaintiff's continued use of the PETER LUGER Marks provides it with strong common law rights to those marks, Plaintiff also owns a number of valid, subsisting, uncancelled and unrevoked registrations in the U.S. Patent and Trademark Office (PTO) for those marks, including the following:

| MARK | REG./APP. NO. | REG./APP. DATE | DESCRIPTION OF GOODS/SERVICES |
|---|---|---|---|
| PETER LUGER | 1,307,537 | 11/27/1984 | Class 9: Restaurant Services |
| PETER LUGER EST. 1887 | 1,346,589 | 07/02/1985 | Class 30: Steak Sauce |
| PETER LUGER EST. 1887 | 1,985,229 | 07/09/1996 | Class 25: T-shirts<br>Class 29: meat |
| LUGER | 2,002,709 | 09/24/1996 | Class 42: restaurant services |
| LUGER | 2,144,979 | 09/24/1996 | Class 29: meats and steaks<br>Class 30: steak sauce |
| PETER LUGER EST. 1887 | 4,560,215 | 07/01/2014 | Class 29: Bacon, and Cooked spinach, namely, spinach |
| PETER LUGER EST. 1887 | 4,560,419 | 07/01/2014 | Class 43: Restaurant services |

21.  Attached hereto as Exhibit A are copies of each of the certificates of registration for the PETER LUGER Marks.

22.  Plaintiff's U.S. Registration Nos. 1,307,537 for PETER LUGER, 1,346,589 for PETER LUGER & Design, 2,002,709 for LUGER, and 2,144,979 for LUGER are incontestable pursuant to 15 U.S.C. § 1065.

23.    Additionally, Plaintiff has the following trademark applications pending: Serial Nos. 86/559,578 and 86/559,587 for the marks PETER LUGER and PETER LUGER EST. 1887 for use in connection with Alcohol-free beers; Beer, ale, lager, stout and porter.

24.    Based on its federal trademark registrations and common law rights, Plaintiff owns the exclusive right to use the PETER LUGER Marks in commerce in connection with the goods and services covered by the registrations.  Peter Luger's unparalleled reputation for quality in the wholesale meat business, restaurant business and gourmet food business was achieved through years of effort and is a priceless asset.

25.    Plaintiff has spent considerable time and expense on the creation and development, as well as enforcement of its PETER LUGER Marks.  Through Plaintiff's widespread reputation for quality and excellence, the PETER LUGER Marks have become strong and well-known in connection with wholesale meat, restaurant and gourmet food services.  As a result of Plaintiff's 130 year use of the PETER LUGER Marks in connection with high quality restaurant services, meat, and steak sauce and the extensive publicity identifying Peter Luger as a premier steakhouse, the PETER LUGER Marks have come to be exclusively associated with high quality restaurant services, steak sauce and meat products originating solely from Plaintiff.

26.    Plaintiff's extensive use and promotion of the PETER LUGER Marks has caused each to become famous in the marketplace and synonymous with Peter Luger as defined in 15 U.S.C. § 1125(c), and Plaintiff has received abundant unsolicited coverage.   For example, the famous Zagat Survey has described Peter Luger's steakhouse as a New York City "landmark" and has received similar praise from the Michelin Guide, which commented that the "endless line of visitors only service to reiterate how special a place this truly is."  The *New York Times*, *USA Today* and *Travel + Leisure* ("Everyone knows Luger's has the best straight-ahead porterhouse in NYC") have each offered rave reviews of Peter Luger's products and services.  Plaintiff has also received numerous awards from restaurant and food industry associations and publications, including Zagat Survey (both NYC and Nationally), USA Today's 'Best Steakhouses in America',

Travel & Leisure's 'Best Steakhouses in the United States', and The Daily Meal's 'America's 50 best Steakhouses for 2016', among others.

        **C.**     **Defendants' Infringing Activity**

27.    On information and belief, on or about December 10, 2009, Defendant Robert Dickert incorporated Defendant Carl von Luger, LLC.

28.    On information and belief, in 2011, long after Plaintiff commenced its continuous and prominent use of the PETER LUGER Marks, and the PETER LUGER Marks had become famous in the U.S., and with actual and constructive knowledge of Plaintiff's prior use of the PETER LUGER Marks, Defendants began operating the Carl von Luger Steak and Seafood restaurant in Scranton, Pennsylvania.

29.    On January 7, 2009, Defendant Carl von Luger, LLC applied to register with the PTO the mark CARL VON LUGER for "Bar and restaurant services; Café and restaurant services; Café-restaurants; Restaurant; Restaurant and bar services; Restaurant and cafe services; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant, bar and catering services" in International Class 43 on an intent-to-use basis. On June 7, 2011, U.S. Registration No. 3,975,009 issued (the "CARL VON LUGER Mark").

30.    Despite only beginning operations in 2011, Carl von Luger brands itself as an "Age Old Family Tradition" and prominently uses the phrase "Since 1887" in marketing and promotional material in a blatant attempt to trade on Plaintiff's famous marks and sterling reputation for high quality restaurant services and premier steaks. As depicted below, Defendants' restaurant logo includes the CARL VON LUGER Mark and incorporates the phrase "Since 1887" in a manner intended to mimic Plaintiff's registered design mark, which prominently includes the phrase "EST. 1887."

| **Plaintiff's Mark** | **Defendant's Restaurant Logo** |
|---|---|
|  |  |

31.     Defendants further try to mislead consumers as to a connection between Defendants and Plaintiff by misleadingly implying that Defendant Dickert named the Carl von Luger restaurant after his father, when, in fact, on information and belief, Dickert made up the name "Carl von Luger." Upon information and belief, Robert Dickert's father's name is not "Carl von Luger" or even "Carl Luger" as Defendants misleadingly suggest; Robert Dickert's father's name is "Carl Dickert."   The fictitious "Carl von Luger" name was chosen as part of a deliberate campaign to confuse consumers as to Defendants' affiliation with the famous Peter Luger steakhouses.

32.     The "About Us" section of Defendants' website features the following misleading language in an effort to create the impression that Defendant Dickert's father was Carl Luger:

> Carl Von Luger's 'Age Old Family Tradition' stems from restaurateur and owner Robert Dickert's connection to the Luger tradition, as he named the restaurant in his father **Carl**'s honor. *Carl* was Peter Luger's (of Peter Luger's Steak House fame) nephew and ran the steakhouse location in Long Island…. (emphasis added)

The first instance of 'Carl' (in bold) is in reference to Carl Dickert, Robert Dickert's father. The immediately subsequent 'Carl' (in italics) is in reference to Carl Luger, Peter Luger's nephew, who is not Robert Dickert's father. The sentence ending provides a thin veil for the false

implication that they are one and the same, and it is a repeated theme throughout Defendants' promotional materials.

33.     Defendants also regularly use the LUGER mark alone (as opposed to Carl von Luger), including on their menu and website, in order to further the misconception that they are affiliated with Plaintiff's famous Peter Luger steakhouses.  For example, on both their lunch and dinner menus, Defendants state: "In the famed Luger Family Tradition, all of our USDA prime streaks are hand selected & dry aged for 21 days then custom cut"; both menus contain dishes such as the "Luger House Salad."  Defendants' also refer to their "Speakeasy Supper Menu" as "The Luger Family's best kept secret!"

34.     Defendant Dickert has even openly admitted in the press in connection with another of his ventures, Great Uncle Peter's Steakhouse,[1] that he "wanted to ride on the shirttails of Luger's, but not calling it Luger's."

### D.     Defendant Dickert's Plans to Expand the Carl von Luger Franchise

35.     In or around May 2017, Defendant Dickert announced his intention to open Carl von Luger Steak and Seafood locations in North Palm Beach, Florida, an area heavily populated with current and former New York residents familiar with Plaintiff's Peter Luger steakhouses.

36.     A recent *My Palm Beach Post* article dated May 4, 2017 announced: "JUST IN: Steak house with a fabled history coming to North Palm Beach." The article proceeds: "Carl von Luger Steak & Seafood, ***an offshoot of Peter Luger of NY***, will take space in a new village clubhouse" (emphasis added). The article states that Defendants plan to open two restaurants in the North Palm Beach Country Club in 2018 following a multi-million dollar transaction with the Village of North Palm Beach.  Although the article is about Defendants' restaurants, the "Steak house with a fabled history" referenced in the headline is undoubtedly Plaintiff's.  As further explained in the article: "The Luger name might not be familiar to Florida natives, but it is well known to residents and visitors hailing from New York. There, Peter Luger Steak House has locations in Brooklyn and

---

[1] Defendant Dickert's "Great Uncle Peter's Steakhouse" was another venture entirely unrelated to Peter Luger whereby Dickert attempted to trade on the name and reputation of Peter Luger.

Long Island. Peter Luger is to steak houses what the **New York Yankees** are to baseball: Consistent winners in a field loaded with competition."

37.     The *My Palm Beach Post* article even includes the following paragraph purportedly about the Carl von Luger steakhouse quoting a Zagat review about *Plaintiff's* steakhouse, evidencing the confusion Defendants are perpetuating in the market:

> The steaks are prime, the meat is dry-aged, the bacon is thick and the porterhouse is not to be missed. The restaurant even concocts its own steak sauce. Zagat calls the place 'a monument to meat' and has ranked it #1 in New York steakhouses for 28 years in a row.

The article also quotes Richard Lackey, a Palm Beach area restaurant broker as saying "by virtue of the fact they have an incredible reputation, anywhere they go in Palm Beach County, they will do well," where Mr. Lackey is clearly confusing Carl von Luger with the famous Peter Luger steakhouses.

38.     Comments by readers following the *My Palm Beach Post* article—which has been shared over 100 times and "liked" by nearly 200 people in a two week period on My Palm Beach Post's Facebook page—evidence the confusion caused by Defendants' use of the PETER LUGER Marks. As one reader specifically notes, "Peter luger is coming to Palm beach." A true and correct copy of the *My Palm Beach Post* article is attached hereto as Exhibit B.

39.     Plaintiff recently became aware of Defendants and the Carl von Luger Steak and Seafood restaurants as a result of this news article and a number of inquiries from professional and personal contacts regarding Plaintiff's affiliation with Defendants and asking whether Plaintiff is opening a location in Palm Beach, Florida.

40.     Plaintiff is well known in Florida, making it all the more likely that people will be confused by the entry of a new Luger steakhouse. More than 1,500 of Plaintiff's PETER LUGER steakhouse account holders have primary residences in Florida (the largest concentration residing in the Palm Beach area). Plaintiff also sells product under its PETER LUGER Marks through one of Florida's largest grocery store chains, Publix, as well as to distributors who, in turn, sell the product to large retailers as well as gourmet, boutique, and independent stores in Florida.

41.    As indicated above, Defendants are succeeding in their efforts to confuse consumers as to their affiliation with Plaintiff. Through their infringing use of the PETER LUGER Marks, and false advertising, Defendants have injured Plaintiff in its business and property and threaten to continue to irreparably injure Plaintiff unless enjoined by this Court.  Defendants' conduct has also deprived Plaintiff of value that rightfully belongs to it through loss of goodwill.

## FIRST CAUSE OF ACTION

### Trademark Infringement

### Lanham Act § 32, 15 U.S.C. § 1114

42.    Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

43.    The acts of Defendants described above constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44.    Plaintiff owns valid and protectable registered rights in the PETER LUGER Marks.

45.    On information and belief, Defendants had actual knowledge of Plaintiff's ownership and use of the PETER LUGER Marks prior to Defendants' adoption and use of confusingly similar variations of the PETER LUGER Marks in connection with the promotion and sale of its products and services.

46.    Plaintiff has not authorized Defendants to use the PETER LUGER Marks, and Defendants' use of the PETER LUGER Marks has resulted in Defendants unfairly and unlawfully benefitting from Plaintiff's goodwill.

47.    Defendants' unauthorized use and promotion of the PETER LUGER Marks are causing confusion, and will likely to continue to cause confusion, mistake, or deception on the part of consumers as to the source, nature, and quality of the products Defendants are offering, constituting trademark infringement in violation of 15 U.S.C. § 1114.

48.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless Defendants are enjoined by the Court, Plaintiff will suffer further harm to its name,

reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

49. On information and belief, Defendants have acted willfully to usurp Plaintiff's rights, and should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a), and Defendants' profits due to the infringement..

## SECOND CAUSE OF ACTION

### False Designations of Origin

### Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A)

50. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

51. In addition to its federal trademark registrations, Plaintiff owns and enjoys valid, enforceable and fully subsisting common law trademark rights in the PETER LUGER Marks in New York and throughout the United States.

52. Defendants' use of the PETER LUGER Mark in commerce constitutes false designations of origin, as it is likely to cause confusion, or to cause mistake, or to deceive consumers as to an affiliation, connection, or association between Plaintiff and Defendants, or as to the origin, sponsorship, or approval of Defendants' goods or services by Plaintiff.

53. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and unless Defendants are enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

54. On information and belief, Defendants have acted willfully to usurp Plaintiff's rights, and should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a), and Defendants' profits due to the infringement.

**THIRD CAUSE OF ACTION**

**Federal Trademark Dilution**

**Lanham Act § 43(a)(1)(C), 15 U.S.C. § 1125(a)(1)(C)**

55.    Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

56.    Plaintiff is the exclusive owner of the PETER LUGER Marks. To enhance its rights further, Plaintiff obtained federal registrations for the PETER LUGER Marks.

57.    The PETER LUGER Marks are all distinctive marks that have been in use for many years and play a prominent role in Plaintiff's marketing, advertising, and the popularity of its goods and services.

58.    The PETER LUGER Marks have gained widespread publicity and public recognition in the United States and the world.

59.    Each of the PETER LUGER Marks is famous and distinctive within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c), and had become famous prior to Defendants' first use of confusingly similar imitations of the PETER LUGER Marks.

60.    Defendants' are using confusingly similar imitations of the PETER LUGER Marks in commerce.

61.    Defendants' use in commerce of confusingly similar imitations of the PETER LUGER Marks dilutes, and/or is likely to dilute the distinctive quality of Plaintiff's famous PETER LUGER Marks and lessens the capacity of those marks to identify and distinguish Plaintiff's goods and services.

62.    Defendants' use in commerce of the confusingly similar and dilutive CARL VON LUGER Mark harms, and/or is likely to harm the reputation of the PETER LUGER Marks due to the difference in the nature and quality of the goods and services offered by Plaintiff compared to those offered by Defendants.

63.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been, is now, and will be irreparably injured and damaged by Defendants' aforementioned acts, and

unless Defendants are enjoined by the Court, Plaintiff will suffer further harm to its name, reputation, and goodwill. This harm constitutes an injury for which Plaintiff has no adequate remedy at law.

64. On information and belief, Defendants have acted willfully to usurp Plaintiff's rights, and should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a), and Defendants' profits due to the infringement.

<strong>FOURTH CAUSE OF ACTION</strong>

<strong>Common Law Trademark Infringement</strong>

65. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

66. Plaintiff owns and enjoys valid, enforceable and fully subsisting common law trademark rights in the PETER LUGER Marks in New York and throughout the United States.

67. Defendants, through the conduct and violations described above, have engaged in, engage in and propose to engage in trademark infringement under New York common law. As a consequence of Defendant's violations, Plaintiff is entitled to relief as set forth below.

<strong>FIFTH CAUSE OF ACTION</strong>

<strong>Unfair Competition Under New York Common Law</strong>

68. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

69. Defendants' promotion, marketing and sale of meat products and operation of restaurant businesses under confusingly similar imitations of the PETER LUGER Marks is likely to:

(1) cause confusion, mistake and/or deception; or

(2) give the false and misleading impression that:

(i) the goods and services offered or sold by Defendants and Plaintiff originate with or are under the control of a single source or are backed or endorsed by a single source; or

(ii)      Defendants are a subsidiary of, or in some way associated with, connected or related to Plaintiff; or

(3)      lead to the passing off of Defendants' products as Plaintiff's.

Such acts are in violation of the law of unfair competition under the common law of New York.

## SIXTH CAUSE OF ACTION

### Violation of the New York Consumer Protection Act

### N.Y. Gen. Bus. Law §§ 349-350

70.    Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

71.    Defendants' use of confusingly similar imitations of the PETER LUGER Marks constitutes deceptive trade practices that tends to deceive or mislead consumers and the trade in violation of the New York Consumer Protection Act, New York Gen. Bus. Law § 349-350.

72.    Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

73.    Defendants' use of the PETER LUGER Marks, described herein, are materially misleading. Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom Defendants have directed their marketing activities, and Plaintiff has been injured thereby.

74.    By the acts described above, Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 and 350 of the New York General Business Law.

75.    Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff. Plaintiff has no adequate remedy at law and thus damaged in an amount no yet determined.

## SEVENTH CAUSE OF ACTION

**Trademark Dilution in Violation of the New York General Business Law**

**(N.Y. Gen. Bus. Law § 360-l)**

76.     Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

77.     Plaintiff is the exclusive owner of the PETER LUGER Marks.

78.     The PETER LUGER Marks are all distinctive marks that have been in use for many years and play a prominent role in Plaintiff's marketing, advertising, and the popularity of its products across different media.

79.     The PETER LUGER Marks have gained widespread publicity and public recognition in the United States and the world.

80.     Defendants' use in commerce of the PETER LUGER Marks dilutes, and/or is likely to dilute the distinctive quality of Plaintiff's famous PETER LUGER Marks and lessens the capacity of those marks to identify and distinguish Plaintiff's goods and services.

81.     By the acts described above, the Defendants have diluted, and are likely to dilute the distinctiveness of Plaintiff's PETER LUGER Marks, and caused a likelihood of harm to Plaintiff's business reputation in violation of Section 360–l of the New York General Business Law.

82.     The Defendants' acts have caused, and will continue to cause, irreparable injury to Plaintiff.  Plaintiff has no adequate remedy at law and is thus damaged in an amount not yet determined.

## EIGHTH CAUSE OF ACTION

**Cancellation of Defendant's Registration No. 3,975,009 for CARL VON LUGER**

**Lanham Act § 37, 15 U.S.C. § 1119**

83.     Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

84. Pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, the district court may order the cancellation of a trademark registration, among other things, in any action involving a registered mark.

85. Defendant Carl von Luger, LLC owns federal trademark registration No. 3,975,009 for the mark CARL VON LUGER in connection with bar and restaurant services.

86. Defendants' promotion, marketing and sale of meat products and operation of restaurant businesses under the name and mark CARL VON LUGER give the false and misleading impression that: the goods and services offered or sold by Defendants and Plaintiff originate with or are under the control of a single source or are backed or endorsed by a single source; or Defendants are a subsidiary of, or in some way associated with, connected or related to Plaintiff; or lead to the passing off of Defendants' products and services as Plaintiff's.

87. As a direct and proximate result of Defendants' continued registration of CARL VON LUGER, Plaintiff is now, and will continue to be irreparably harmed by the CARL VON LUGER Mark's false connection to and/or misrepresentation of goods as belonging to Plaintiff. Unless Registration No. 3,975,009 is cancelled by order of the Court, Plaintiff will suffer further harm to its reputation and goodwill, for which there is no adequate remedy at law.

## NINTH CAUSE OF ACTION

### False Advertising

### Lanham Act 43(a)(1)(B), 15 U.S.C. 1125(a)(1)(B)

88. Plaintiff incorporates by reference and realleges all previous paragraphs as though fully set forth herein.

89. Defendants, in connection with their commercial advertising and promotion, have misrepresented and continue to misrepresent the nature, characteristics, and qualities of their goods and services. As a consequence of Defendants' misconduct, Plaintiff is entitled to relief as set forth below.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against. as follows:

1.      Preliminarily and permanently enjoining Defendants, and all persons in active concert or participation with it, from directly or indirectly:

- using the CARL VON LUGER Mark, or any other mark, word, or name incorporating or confusingly similar to Plaintiff's PETER LUGER Marks, including the mark LUGER;

- from representing by any means whatsoever, that Defendant and its goods and services are associated in any way with Plaintiff or its PETER LUGER Marks;

- from doing any other acts calculated or likely to cause confusion or mistake in the mind of the public or to lead others to believe that Defendant's products or services come from or are the products or services of Plaintiff, or are somehow sponsored by or associated with Plaintiff; and

- from otherwise unfairly competing with Plaintiff or misappropriating Plaintiff's reputation and goodwill.

2.      Cancelling Defendant Carl von Luger, LLC's Registration No. 3,975,009 for the CARL VON LUGER Mark.

3.      Ordering Defendants to deliver up for destruction all products, packaging, labels, wrappers, signs, prints, advertisements, electronic files and other articles bearing the infringing CARL VON LUGER Mark.

4.      Awarding Plaintiff its actual damages and Defendants' unjust and unlawful profits arising from Defendants' misconduct;

5.       Ordering restitution to Plaintiff for Defendants' unjust enrichment and unlawful gains to the detriment of Plaintiff.

6.      Awarding Plaintiff additional damages and profits of three times the actual damages and profits, together with attorneys' fees.

7.  Awarding exemplary damages in an amount to be determined by jury.

8.  Awarding Plaintiff its costs of suit, attorney's fees, and reasonable expenses in this exceptional case;

9.  Awarding pre-and post-judgment interest at the maximum rate allowable by the law; and

10. Granting such other relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  New York, New York

May 18, 2017                    WINSTON & STRAWN LLP


By:  ___*s/ Michael S. Elkin*___
            Michael S. Elkin

Michael S. Elkin
*melkin@winston.com*
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone:     (212) 294-6700
Facsimile:     (212) 294-4700

Jennifer A. Golinveaux (*pro hac vice* application forthcoming)
*jgolinveaux@winston.com*
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111-5840
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

*Attorneys for Plaintiff*